**HAROLD TAYLOR**
FULL NAME

**SAME**
COMMITTED NAME (if different)

**California Institution for Men ("CIM")**
FULL ADDRESS INCLUDING NAME OF INSTITUTION

**14901 Central Ave., Chino, CA. 91710**

**T-22119**
PRISON NUMBER (if applicable)

FILED
11/27/18
CENTRAL DISTRICT OF CALIFORNIA
BY: **CS**          DEPUTY

Received   11-26-2018
(Date)
Scanned at CIM and E-mailed
on  11-26-18  by  CT
(Date)          (Initials)
Number of pages scanned:
74

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HAROLD TAYLOR et al.,<br><br>PLAINTIFF,<br><br>v.<br><br>WARDEN DEAN BORDERS et al.,<br><br>DEFENDANT(S). | CASE NUMBER **EDCV18-2488-AB(AGR)**<br><br>*To be supplied by the Clerk*<br><br>**CIVIL RIGHTS COMPLAINT**<br>**PURSUANT TO** *(Check one)*<br>☒ 42 U.S.C. § 1983  Class Action<br>☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner:  ☐ Yes  ☒ No

2. If your answer to "1." is yes, how many?  __N/A__

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

   NO PREVIOUS LAWSUIT, proceed to Pg.12 of 74 for Introduction and General Allegations of this § 1983 case.

[Pg.1 of 74]

a. Parties to this previous lawsuit:

Plaintiff _____ NO PREVIOUS LAWSUIT _____

Defendants NO PREVIOUS LAWSUIT

b. Court _____ N/A

c. Docket or case number _____ N/A

d. Name of judge to whom case was assigned _____ N/A

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _____ N/A

f. Issues raised: _____ N/A

g. Approximate date of filing lawsuit: _____ N/A

h. Approximate date of disposition _____ N/A

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

   If your answer is no, explain why not _____ N/A

3. Is the grievance procedure completed? ☒ Yes   ☐ No

   If your answer is no, explain why not _____ N/A

4. Please attach copies of papers related to the grievance procedure. See Exhibit 1 & 11 attached herein.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff ___ HAROLD TAYLOR et al., ___
(print plaintiff's name)

who presently resides at 14901 Central Ave., Chino, CA. 91710
(mailing address or place of confinement) ,

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

The City of Chino, California (San Bernardino County)
(institution/city where violation occurred)

on (date or dates) <u>January 18, 2018</u> , <u>April 12, 2018</u> , <u>July 12, 2018</u> .
                      (Claim I)          (Claim II)           (Claim III)

**NOTE:**    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.   Defendant  <u>CIM Warden Dean Borders</u>                     resides or works at
                   (full name of first defendant)

                  <u>14901 Central Ave., Chino, CA. 91710</u>
                  (full address of first defendant)

                  <u>Warden and Senior Administrative and Policy making officer</u>
                  (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:
<u>Borders used his official government authority as Warden to knowingly cause heat</u>
<u>related illnesses and on-going exposure to contaminates with intent to harm.</u>

2.   Defendant   <u>Bill Borilla</u>                     resides or works at
                   (full name of first defendant)

                   <u>14901 Central Ave., Chino, CA. 91710</u>
                   (full address of first defendant)

                   <u>CIM Plant Operations Manager</u>
                   (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:
<u>Borilla misused his government power and authority to intentionally harm High</u>
<u>Risk Medical ("HRM") patients by causing heat strokes and poisonings and other harm</u>

3.   Defendant  <u>Isaac Morales</u>                    resides or works at
                   (full name of first defendant)

                   <u>14901 Central Ave., Chino, CA. 91710</u>
                   (full address of first defendant)

                   <u>Chief Engineer I, Water Treatment Plant ("WTP")</u>
                   (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:
<u>Morales misused his government power and authority to conceal on-going poisioning</u>
<u>of HRM patients with intent to harm and cause death.</u>

[Pg.3 of 74]

on (date or dates) _____, _____, _____.
  (Claim I)          (Claim II)        (Claim III)

NOTE:   You need not name more than one defendant or allege more than one claim. If you are naming more than
        five (5) defendants, make a copy of this page to provide the information for additional defendants.

4. Defendant   Julie Cavender
               (full name of first defendant)                                    resides or works at
               14901 Central Ave., Chino, CA. 91710
               (full address of first defendant)

               Chief Engineer and WTP Manager
               (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law: Cavender misused her government power
and authority to conceal on-going contamination and poisoning of disabled HRM
patients with intent to cause harm, injury and premature death.

5. Defendant   B.Casterena
               (full name of first defendant)                                    resides or works at
               14901 Central Ave., Chino, CA. 91710
               (full address of first defendant)

               Associate Warden for Disabled High Risk Medical Patients
               (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law: B.Casterena abused his government
Power and authority to intentionally harm disabled HRM patients by failing to
act to protect from known heat related illnesses and contamination.

6. Defendant   Dr.T.Lee
               (full name of first defendant)                                    resides or works at
               14901 Central Ave., Chino, CA. 91710
               (full address of first defendant)

               Chief Physician and Surgeon
               (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law: Dr.T.Lee abused his government power
and authority to advance the poisoning of HRM patients. Lee also knew or should
known that the A-Facility Dorms are deadly and unsafe due to lack on ANY cooling.

on (date or dates) _____, _____, _____
          (Claim I)         (Claim II)         (Claim III)

NOTE:    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

7.  Defendant  <u>Dr.K.Torres</u> _____ resides or works at
        (full name of first defendant)

        <u>14901 Central Ave., CA. 91710</u> _____
        (full address of first defendant)

        <u>Physician and Surgeon</u> _____
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☒ official capacity.

Explain how this defendant was acting under color of law: Dr.K.Torres abused his power and authority to allow for HRM patients to continue to suffer symptoms and on-going harm from contaminated water and unsafe housing which he knew or should have known.

8.  Defendant  <u>M.Dunlap</u> _____ resides or works at
        (full name of first defendant)

        <u>14901 Central Ave., Chino, CA. 91710</u> _____
        (full address of first defendant)

        <u>Health Care Compliance Analyst</u> _____
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☒ official capacity.

Explain how this defendant was acting under color of law: M.Dunlap used his power and authority as Health Care risk analyst to continue to allow HRM patients to continue to suffer from pain, injury and harm from contaminated water and unsafe housing conditions.

9.  Defendant  <u>T.Lambert</u> _____ resides or works at
        (full name of first defendant)

        <u>14901 Central Ave., Chino, CA. 91710</u> _____
        (full address of first defendant)

        <u>CIM Health Care Appeals coordinator</u> _____
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☒ official capacity.

Explain how this defendant was acting under color of law: T.Lambert abused her power and authority to intentionally cause on-going harm and injury to Elderly custodial care HRM patients that she knew or should have known were being harmed at CIM.

10. Defendant _S.Almosara_____ resides or works at
(full name of first defendant)

_14901 Central Ave., Chino, CA. 91710_____
(full address of first defendant)

_CIM Chief Engineer I._____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law: _S.Almosara abused is governmental power_
_and authority to intentionally cause on-going harm, injury and premature death to_
_Elderly custodial care HRM patients who he know or should have known were in danger._

Defendant _____ resides or works at

(full name of first defendant)

_____
(full address of first defendant)

_____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:
_____
_____

CIVIL RIGHTS COMPLAINT

CV-66 (7/97)

**D. CLAIMS\***

**CLAIM I**

The following civil right has been violated:

_For all claims, see COUNTS ONE THROUGH SEVEN at Pages 64 - 68._

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

_See:_   COMMON FACTUAL ALLEGATIONS at Pages 23 - 29   and >

CLAIMS OF CLASS REPRESENTATIVES at Pages 30 - 50   and >

DECLARATIONS OF CLASS REPRESENTATIVES at Exhibit 8.

_\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline._

CV-66 (7/97)                    CIVIL RIGHTS COMPLAINT

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

See:   APPROPRIATENESS OF EQUITABLE RELIEF at Page 69 and >

PRAYER at Page 71.

11/26/2018
*(Date)*

Harold Taylor
*(Signature of Plaintiff)*
HAROLD TAYLOR

[Pg. 8 of 74]

HAROLD TAYLOR T-22119
CIM-A2 LH-158 L
P.O. Box 500
Chino, CA. 91701

HAROLD TAYLOR, Class Representative
Plaintiff in Pro Se'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

-oOo-

| | |
|---|---|
| HAROLD TAYLOR, DAVID M. ZIEMKE, JON GARY SCHNABEL, BRUCE KOKLICH as Attorney in Fact for the Estate of BRUCE BROOKS, RONALD E. AUSTIN, CHRISTOPHER CAMP, BRUCE KOKLICH, and GEORGE JACKSON all individually and as Class Representatives,<br><br>Plaintiffs,<br><br>-vs-<br><br>Warden DEAN BORDERS, individually and in his official capacity; Assoicate Warden J.CORE, individually and in her official capacity, Plant Operations BILL BORILLA, individually and in his official capacity, Chief Engineer ISAAC MORALES, individually and in his official capacity; Water Operations JULIE CAVENDER, individually and in her official capicity; B.CASTERENA, individually and in his official capacity; Dr.T.LEE, individually and in his official capacity; Dr.K.TORRES, individually and in his official capicity; M.DUNLAP, individually and in his official capacity; T.LAMBERT, individually and in his official capacity; Chief Engineer S.ALMOSARA, individually and in his official capacity: CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, a California Public Entity; CALIFORNIA INSTITUTION FOR MEN, a California Public Entity; and DOES 1 through 20.<br><br>Defendants | Case No. _____<br><br>CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>1. 42 U.S.C. § 1983 (Equal Protection)<br><br>2. Toxic Tort & Gender Discrimination Liability under California's Bane Act, Cal.Civ.Code § 52.1<br><br>3. Title II. of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 et seq.,<br><br>4. Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.,<br><br>5. On-Going Medical Condition Discrimination under California's Disabled Persons Act, Cal.Civ. Code § 54 et seq.,<br><br>6. Toxic Tort and Substandard Condition Liability under the Elder Abuse Act, Cal.Welf.& Inst. Code § 15600 et seq.,<br><br>7. Injunctive Relief Pursuant to Artical 1 § 7 of Cal.Cont. and Cal.Gov.Code § 111135(A).<br><br>DEMAND FOR JURY TRIAL |

CLASS COMPLAINT TABLE OF CONTENTS

Page #

I.      INTRODUCTION AND GENERAL ALLEGATIONS . . . . . . . . . . .   12

II.     JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . .   15

III.    PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . .   16

        A.  PLAINTIFFS  . . . . . . . . . . . . . . . . . . . .   16

            CLASS REPRESENTATIVES NO LONGER IN CUSTODY. . .   16

            CLASS REPRESENTATIVES IN CUSTODY AT CIM . . . .   16

        B.  DEFENDANTS  . . . . . . . . . . . . . . . . . . .   20

IV.     COMMON FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . .   23

V.      CLAIMS OF CLASS REPRESENTATIVES. . . . . . . . . . . . . .   30

VI.     EXHAUSTION OF ADMINISTRATIVE REMEDIES. . . . . . . . . . .   51

VII.    CLASS DEFINITIONS AND RULE 23 PREREQUISITES. . . . . . . .   53

        A.  CLASS DEFINITIONS . . . . . . . . . . . . . . . .   53

        B.  NUMEROSITY. . . . . . . . . . . . . . . . . . . .   54

        C.  COMMON ISSUES OF FACT OR LAW. . . . . . . . . . .   55

        D.  TYPICALITY  . . . . . . . . . . . . . . . . . . .   60

        E.  MAINTENANCE AND SUPERIORITY . . . . . . . . . . .   61

VIII.   COUNT ONE – 42 U.S.C. § 1983 [EQUAL PROTECTION]
        (ALL DEFENDANTS) . . . . . . . . . . . . . . . . . . . .   64

IX.     COUNT TWO – CAL.CIV.CODE § 52.1 (ALL INDIVIDUAL DEFENDANTS)   65

X.      COUNT THREE – VIOLATION OF TITLE II OF THE AMERICANS WITH
        DISABILITIES ACT OF 1990, 42 U.S.C. § 12101 et seq.,
        (AGAINST ALL DEFENDANTS) . . . . . . . . . . . . . . . .   65

XI.     COUNT FOUR – VIOLATION OF THE REHABILITATION ACT OF 1973,
        29 U.S.C. § 794 et seq., (ALL INDIVIDUAL DEFENDANTS  . . .   66

XII.    COUNT FIVE – VIOLATION OF CALIFORNIA'S DISABLED PERSONS ACT,
        CAL.CIV.CODE § 54 et seq., (ALL INDIVIDUAL DEFENDANTS) . .   67

XIII.   COUNT SIX – VIOLATION OF THE ELDER ABUSE ACT – CALIFORNIA'S
        WELFARE AND INSTITUTIONS CODE SECTION 15600 et seq.,
        (ALL INDIVIDUAL DEFENDANTS). . . . . . . . . . . . . . .   68

CLASS COMPLAINT TABLE OF CONTENTS (Pg.2)

Page #

XIV. COUNT SEVEN − INJUNCTIVE RELIEF PURSUANT TO ARTICLE 1 § 7 OF THE CALIFORNIA CONSTITUTION [EQUAL PROTECTION] AND CAL.GOV. CODE § 11135(A) (ALL DEFENDANTS) . . . . . . . . . . . . . . . 86

XV. APPROPRIATENESS OF EQUITABLE RELIEF. . . . . . . . . . . 69

XVI. PRAYER . . . . . . . . . . . . . . . . . . . . . . . 70

VERIFICATION OF CLASS COMPLAINT − 28 U.S.C. § 1746 . . . . 71

DEMAND FOR JURY TRIAL. . . . . . . . . . . . . . . . 72

EXHIBIT LIST (Exhibits 1 to 14). . . . . . . . . . . . . 73−74

I.   INTRODUCTION AND GENERAL ALLEGATIONS

1.    In this class case, approximately 1600 medically disabled male inmate Plaintiff's seek damages and injunctive relief relating to two on-going occurrences: 1) Toxic Tort on-going harm based on gender and medical condition disability discrimination because of multiple continuing violations of federal and state drinking water standards and on-going non-compliance with the statutory and regulatory scheme; 2) Elder Abuse Act and on-going medical condition discrimination in violation of the ADA and the Bane Act.  Breaching both state and federal constitutions by housing elderly disabled medical patients in substandard and dilapidated custodial care housing with no ambient air cooling, when temperatures frequently exceed 100°, causing premature death, injury, harm, pain and on-going suffering.

2.    The California Institution for Men ("CIM") in Chino California, it's Warden Dean Borders, Associate Warden J.Core and supervisory staff plaintiffs, named hereinafter, have been aggregating High Risk Medical ("HRM") inmate patients (over 1600 of them) at CIM for over six years.  The documented HRM and ADA disabilities include, but are not limited to: HIV, Hep.C, Cancer (various types), Cardiac Conditions, High Blood Pressure, Diabetes, Valley Fever, Asthma, Allergies, COPD, Osteoarthitis, Degenerative Joint Disese, Incontinence, Seizures, and Elderly (over 65 years of age).

3.    Plaintiff's, and the classes they seek to represent, bring this action to challenge the systematic gender and medical condition discrimination including on-going denial of equal treatment experienced by the HRM patients at CIM. Male HRM patients are not given equal access to non-contaminated drinking water (women prisoners are provided with bottled water, but not the men), nor are the HRM patients at CIM provided with equal ambient air cooling in their pre and post treatment custodial care housing,

1   and as a result are treated in a physically abusive and neglectful manner

2   (negligence and physical abuse under the Elder Abuse Act).   In short, HRM

3   patients at CIM endure substantially worse conditions of confinement simply

4   because they are HRM disabled male patients.   The substandard and unequal

5   conditions, physical abuse, restrictions and denials of access to services

6   for HRM inmate patients are the same regardless of whether one is infected

7   with HIV or one has Cancer, Diabetes or Valley Fever.   The unequal treatment

8   is identical for all HRM patients regardless of the medical condition.

9   4.      One of the claimed reasons that the California Department of

10  Corrections and Rehabilitation ("CDCR") uses to transfer and aggregate HRM

11  patients at CIM is the location, CDCR claims that CIM is close to and has

12  better access to local hospitals and medical specialist care.   Yet, disabled

13  HRM patients at CIM have no access to un-contaminated drinking water

14  (a basic human right), nor do the HRM patients have access to safe and equal

15  pre and post treatment custodial care housing ambient air cooling.   To the

16  extent that HRM patients may receive un-contaminated drinking water on rare

17  occasions, it is substantially less than is provided to women prisoners at

18  California Institution for Women ("CIW"), who continue to receive bottled

19  drinking water and have done so for a five year period at a cost of

20  $480,000.00 per year (see Ex.6).

21  5.      As a result, CIM HRM patients do not enjoy the ability to receive

22  two basic human rights: 1) The right of a recovering or in-treatment HRM

23  patient to receive uncontaminated drinking water, so he can recover from

24  his medical condition or disease; 2) The right to recover living in a pre

25  or post treatment custodial care housing unit that is kept at a safe ambient

26  air living temperature for 60, 70 and 80+ year old HRM patients.   Currently

27  CIM A-Facility has a 94 year-old World War II veteran (Fred Knight CDCR

28  # P-99856) living in an uncooled (fans only) old and dilapidated

1    (dorms built in the 1940's), overcrowded (currently filled to between 170%

2    and 180% of design capacity), and deadly (outside temperature on July 6th%

3    7th 2018 was 115° and 114°) custodial care housing unit.

4    6.    Plaintiff's are informed and believe that HRM patients at CIM are

5    suffering and  dying prematurely, being harmed, sickened and infected more

6    frequently and are at risk of more heat strokes and heat exhaustion events

7    because Defendants have failed to complete the required structural changes

8    to achieve equal services and program access to their facilities including

9    providing equal and safe drinking water (like bottled water provided to the

10   women at CIW) and adequate and safe ambient air cooling for HRM patients

11   (like are provided to other male HRM patients at Mule Creek State Prison

12   ("MCSP") and Richard J. Donovon State Prison ("RJD")).  Plaintiff's are

13   uncertain as to the degree of causation on the premature and wrongful death

14   sub-class of HRM deceased patients and include the wrongful death sub-class

15   so that, if it develops in this case, it has been clearly alleged.

16   Regardless as to the degree of premature and/or wrongful death, all HRM

17   patients suffered the same deprivations and consequences of unequal

18   treatment regarding consumption of substandard and harmful drinking water

19   and inadequate and deadly overheated pre and post treatment custodial care

20   ambient air housing conditions.

21   7.    Some HRM patients have been retaliated against by CIM medical staff

22   when they complained about the contaminated and substandard drinking water

23   and the discriminatory treatment of HRM patients. (See Ex.8 Taylor Dec. at Pg.2).

24   8.    The foregoing conditions of confinement violate Plaintiffs rights

25   to equal protection of the laws under both Article I §7 of the California

26   Constitution and the Fourteenth Amendment to the United States

27   Constitution, and related statutes incorporating, inter alia, equal

28   protection standards.  Although state prisons have an obligation to protect

the safety of HRM patients who are under their custodial care, there is not a permissible basis upon which to subject HRM custodial care patients to significantly worse conditions, deprive them of access to un-contaminated and equal quality drinking water or to subject them to premature death, elder abuse and substandard housing related physical injury based on their medical disability or gender.

9.    This action is brought independently under the California Constitution and California statutes incorporating those provisions directly and indirectly, as well as under the Unites States Constitution through 42 U.S.C. § 1983.  Plaintiff's emphasize the independent character of the California claims because the California Supreme Court has expressly held that different treatment of disabled medical patients and gender based discrimination is subject to strict constitutional scrutiny, an issue not yet squarely addressed by the United States Supreme Court.  In addition, California claims are not subject to the requirements, limitations and restrictions of the Prison Litigation Reform Act ("PLRA").  Plaintiff's contend that the conduct alleged herein is unconstitutional whatever level of scrutiny is employed - whether it is strict scrutiny, heightened scrutiny or rational basis scrutiny, for there is no legitimate penological reason to treat CIM disabled HRM male inmate patients worse than CIW female inmates, or worse than other HRM patients at other HRM institutions like MCSP or RJD, both of which have ambient air cooling for their HRM disabled custodial care patients.

## II.    JURISDICTION AND VENUE

10.    Plaintiffs present federal claims for relief under 42 U.S.C. § 1983. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1341.  Plaintiff's state law claims are so related to their federal law claims that they form part of the same case or controversy.

1    Accordingly, supplemental jurisdiction over the state law claims is

2    conferred upon this Court by 28 U.S.C. § 1367.

3                              III.   PARTIES

4         A.   PLAINTIFFS:

5    11.   CLASS REPRESENTATIVES NO LONGER IN CUSTODY:   Plaintiff's Jeff

6    Sabino, Richard Slaughter, Ralph Sanchez, Lawerance Howerton, Shawn Hill,

7    The Estate of Bruce Brooks – Bruce Koklich as Attorney in Fact, were, but

8    are not presently, incarcerated at CIM, and were subjected to unequal

9    treatment and denied access to equal services and programs, denied access

10   to uncontaminated drinking water, and other violations of law as is

11   elaborated further on in this complaint.  The unequal treatment and access

12   and other violations of law were based on Plaintiff's medically disabled

13   condition or gender, and their classification as HRM patients.  The six

14   are not prisoners within the meaning of the prison Litigation Reform Act

15   ("PLRA") at the time of the filing of this complaint.  They seek to act

16   as class representatives for the federal damages class – and all six are

17   also state damages class representatives as they have been denied state

18   administrative § 910 claims or are covered by such claims because all

19   § 910 claims were filed as class claims.  They are at times referred to

20   as the "Federal Damages Class Representatives".  All six are also among

21   the Federal and  the California Damages Class Representatives.

22   12.   CLASS REPRESENTATIVES IN CUSTODY AT CIM:   Plaintiff's: Harold

23   Taylor, David M. Ziemke, Jon Gary Schnable, Ronald E. Austin, Christopher

24   Camp, Bruce Koklich and George Jackson are currently incarcerated at CIM.

25   They have been subjected to, and will continue to be subjected to unequal

26   treatment and denial of access to services and programs, and other

27   violations of law as elaborated in this complaint.  The unequal treatment,

28   unequal access, discrimination and other violations of law elaborated in

this Complaint were and are based on Plaintiff's disabled medical condition or gender and their classification as HRM custodial patients.

    a.   Plaintiffs Taylor, Ziemke, Schnabel, Austin, Camp, Koklich, and Jackson are the only class representatives for the state injunctive relief classes and are at times referred to as the "California Injunctive Relief Class Representatives."

    b.   Plaintiffs Taylor, Ziemke, Schnabel, Austin, Camp, Koklich, and Jackson are also among the "California Class Damages Representatives" because they have filed administrative § 910 claims on behalf of all HRM inmate patients at CIM which have been rejected, or are covered by such claims because all § 910 claims were filed as class claims.

    c.   Taylor, Ziemke, Schnabel, Austin, Camp, Koklich and Jackson are also the only class representatives for the federal injunctive relief class and are at times referred to as the "Federal Injunctive Relief Class Representatives."

13.   Different and overlapping Plaintiff's are acting as representatives for different classes.  The classes and class representatives identified in this complaint are: Federal Damages Class (Sabino, Slaughter, Sanchez, Howerton, Hill and the Estate of Bruce Brooks); 2) California Damages Class (Taylor, Ziemke, Schnabel, Austin, Camp, Koklich, Jackson, Sabino, Slaughter, Sanchez, Howerton, Hill and the Estate of Bruce Brooks); 3) The Federal and California Injunctive Relief Class (Taylor, Ziemke, Schnabel, Austin, Camp, Koklich and Jackson).  While the various class representatives overlap in certain respects they differ as follows:

    a.   The Federal Damages Class Representatives who were, within the relevant time periods, HRM inmate patients housed at CIM, but

1    are not currently in custody in any detention facility, jail

2    or prison and are not "prisoners" within the meaning of the

3    PLRA.  The Federal Damages Class extends to all former or

4    present HRM inmate patients detained at CIM within the two

5    years prior to the filing of this lawsuit, and extending into

6    the future until such time as the unlawful and discriminatory

7    conduct alleged herein ceases or resolution of this case.

8    b.    The California Damages Class representatives are individuals

9    who are or were within the relevant time periods, HRM inmate

10   patients at CIM.  Unlike the Federal Damages Class

11   representatives, the California Damages Class representatives

12   include individuals who are currently "Prisoners" within the

13   meaning of the PLRA, which statute does not apply to their

14   claims under California law. All such class representatives

15   were in custody at CIM on or after December 25, 2017 (six

16   months prior to the filing by Harold Taylor of a Government

17   Code § 910 claim on behalf of all similarly situated

18   individuals on June 25, 2018, which makes the beginning of the

19   California Class damages period December 25, 2017).  The

20   California Damages Class extends to all former or present HRM

21   inmates patients detained at CIM beginning December 25, 2017,

22   and extending into the future until such time as the unlawful

23   conduct alleged herein ceases or resolution of this case.

24   c.    The Federal and California Injunctive Relief Class

25   representatives are individuals who are currently in custody

26   at CIM, are HRM inmate patients, who have exhausted or

27   attempted to exhaust, or could not exhaust because they were

28

1    prevented through the conduct of the CDCR from exhausting their

2    remedies within the CDCR.

3    14.    The following chart identifies each named plaintiff, what class or

4    classes each seeks to represent, and their current inmate status.

| NAME | CLASS | INMATE STATUS |
| --- | --- | --- |
| Harold Taylor | Federal and California Injunctive Relief Classes and California Damages Class | Inmate at CIM |
| David M. Ziemke | Federal and California Injunctive Relief Classes and California Damages Class | Inmate at CIM |
| Jon Gary Schnabel | Federal and California Injunctive Relief Classes and California Damages Class | Inmate at CIM |
| Ronald E. Austin | Federal and California Injunctive Relief Classes and California Damages class | Inmate at CIM |
| Christopher Camp | Federal and California Injunctive Relief Classes and California Damages Class | Inmate at CIM |
| Bruce Koklich | Federal and California Injunctive Relief Classes and California Damages Class | Inmate at CIM |
| George Jackson | Federal and California Injunctive Relief Classes and California Damages Class | Inmate at CIM |
| Jeff Sabino | Federal and California Damages Class | Not currently in custody |
| Richard Slaughter | Federal and California Damages Class | Not currently in custody |
| Ralph Sanchez | Federal and California Damages Class | Not currently in custody |
| Lawerance Howerton | Federal and California Damages Class | Not currently in custody |
| Shawn Hill | Federal and California Damages Class | Not currently in custody |
| Est. of Bruce Brooks | Federal and California Damages | Not currently in custody |

15.     All Plaintiffs identified in the foregoing paragraphs have filed § 910 Administrative Claims with the state on an individual bases and as class representatives or as set forth above, are included in the § 910 claims because all § 910 claims were filed as class claims to include all HRM inmate patients at CIM.  All claims have been rejected by the state of California as of the date of filing of this Complaint.

B. DEFENDANTS

16.     Defendant California Department of Corrections and Rehabilitation ("CDCR") is a California Public entity organized and existing under the laws of the State of California.  Defendant California Institution for Men ("CIM")    is a public entity within the meaning of California law, and is a state agency under CDCR.  These Defendants are sued in their own right for a state and/or CIM policy, practice or custom that caused Plaintiffs' injuries in violation of one or more federal constitutional guarantees under 42 U.S.C. § 1983, and on Plaintiffs' state law claims for injunctive relief based on violations of state constitutional provisions identified above and California Civil Code § 52.1 and § 54 et seq.

17.     All individual Defendants are named based on their personal involvement and/or supervisorial liability for their role in the constitutional deprivations alleged herein, including but not limited to their establishment, setting in motion, failing to terminate, ratification, implementation, institution, and/or execution of the discriminatory actions, policies, practice and customs against HRM inmate patients at CIM, and/or failure to adequately train or supervise CIM personnel who engaged in the conduct alleged herein.

18.     Defendant Dean Borders(hereafter "Borders") is the Warden of California Institution for Men ("CIM"), and is the policy maker for CIM. He is sued in his official and individual capacities for both injunctive

1   relief and damages under both California and Federal law.

2   19.   Defendant J.Core (hereafter "Core") is the Associate Warden in

3   charge of Plant Operation grievances and oversees CIM facilities.   Core is

4   sued in her individual capacity for damages only under both California and

5   Federal law.

6   20.   Defendant Bill Borilla (hereafter "Borilla") is a CIM Plant

7   Operation Manager and is responsible for CIM facilities.   Borilla is sued

8   in his individual capacity for damages only under California and Federal

9   law.

10   21.   Defendant Isasc Morales (hereafter "Morales") is a Chief Engineer I

11   and is responsible for CIM's Water Treatment Plant ("WTP"), which includes

12   reporting contaminates to  the State Water Resources Control Board as well

13   as providing proper notices of water quality conditions.  Morales is sued

14   his individual capacity for damages only under California and Federal law.

15   22.   Defendant Julie Cavender (hereafter "Cavender") is/was responsible

16   for CIM's water operations including reporting contaminates to the State

17   Water Resources Control Board as well as providing proper notices of water

18   quality conditions. Cavender is sued in her individual capacity for damages

19   only under California and Federal law.

20   23.   Defendant B.Casterena (hereafter "Casterena") is CIM's Associate

21   Warden of ADA operations and is responsible for providing disability

22   accommodations to CIM HRM disabled paients. Casterena  is sued in his

23   individual capacity for damages only under both California and Federal law.

24   24.   Defendant Dr.T.Lee (hereafter "Lee") is CIM's Chief Physician and

25   Surgeon and is responsible for providing and evaluating ADA disability

26   accommodations to CIM's HRM disabled Patients.  Lee is sued in his

27   individual capacity for damages only under both California and Federal law.

28        //

25.   Defendant Dr.K.Torres (hereafter "Torres") is a CIM Physician and Surgeon and is responsible for providing and evaluating ADA disability accommodations to CIM HRM disabled patients.  Torres is sued in his individual capacity for damages only under both California and Federal law.

26.   Defendant M.Dunlap (hereafter "Dunlap") is a CIM health care Compliance Analyst and is responsible for providing, evaluating and advising CIM staff on ADA disability accommodations for CIM HRM disabled patients. Dunlap is sued in his individual capacity for damages only under both California and Federal law.

27.   Defendant T.Lambert (hereafter "Lambert") is a CIM Health Care Appeals Coordinator and is responsible for providing and evaluating ADA disability accommodations for CIM HRM disabled patients.  Lambert is sued in his individual capacity for damages only under both California and Federal law.

28.   Defendant S.Almosara (hereafter "Almosara") is a CIM Chief Engineer and is responsible for CIM's ambient air heating and cooling systems. Almosara is sued in his individual capacity for damages only under both California and Federal law.

29.   All defendants' discriminatory conduct was intentional, and/or was done with reckless disregard for, and/or deliberate indifference toward Plaintiff's rights.

30.   Plaintiff's are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiff's will give notice of this complaint, and of one or more DOES' true names and capacities, when ascertained.

31.   Plaintiffs are informed and believe, and based thereon allege, that Defendants DOES 1 through 5 are responsible in some manner for the damages

1  and injuries hereinafter complained of.

2  32.    DOES 6 through 10 (hereinafter collectively referred to as "CIM

3  Supervisory Defendants") were and/or are now responsible for the CIM

4  institution.  Among other duties, they are responsible for the training,

5  Supervision, control, assignment, and discipline of both sworn and civilian

6  personnel at CIM who work in, operate, administer and  manage the CIM

7  prison custodial care housing units and its Water Treatment Plant, and for

8  the formulation, promulgation, adoption, application, administration and

9  enforcement of the policies, rules, regulations and practices of the CIM

10  prison.

11  33.    Upon information and belief, Plaintiffs further allege that, at all

12  times relevant herein, Defendants participated in, approved, and/or

13  ratified the unconstitutional or illegal acts that occurred within CIM

14  which are complained herein.

15  34.    Plaintiffs are informed and belief, and thereupon allege that, all

16  times relevant herein, the Defendants, and each of them, were the agents,

17  servants and employees of their respective employers (Defendants CDCR and

18  CIM) and were acting at all times within the scope of their agency and

19  employment with knowledge and consent of their principles and employers.

20  At all times herein, Defendants, and each of them, were acting under color

21  of state law.

22             IV.    COMMON FACTUAL ALLEGATIONS

23  35.    Inmates in CDCR custody who are classified as High Risk Medical

24  ("HRM") patients during the on-going medical condition review process are

25  automatically transferred to one of three HRM institutions (MCSP, RJD or

26  CIM).  CIM is a inadequate, substandard, old (built in the 1940's),

27  dilapidated and is an inferior HRM institution and is the only one that

28  does not provide ambient air cooled pre and post treatment custodial care

1   housing for it's HRM patients.  CIM is also the only institution that

2   provides excessively contaminated drinking water to it's HRM inmate

3   patients  The California Institution for Women ("CIW") is located

4   approximately 2¼ miles south of CIM and receives the same contaminated

5   service water from CIM's Water Treatment Plant ("WTP") via a 2½ mile pipe

6   line.  All women inmates (HRM and Non-HRM) at CIW receive bottled water,

7   but none of the men at CIM do.  CIM consists of four facilitiles/yards

8   (A,B,C&D) each yard has a different classification of inmate, but all have

9   HRM patients 80%-90% on A Yard.  Because A-Facility has the highest number

10  of HRM patients (approximately 880) it also houses more wheel chair bound

11  and walker bound medically disabled HRM patients.  A-yard houses 30+

12  wheelchair bound ADA mobility impaired HRM patients and 25+ walker bound

13  ADA mobility impaired HRM patients.  A-Facility has 8 single story 160 bed

14  Dormitories  ("Dorm") and as of November 14, 2018 has a head count of

15  approximately 1100 imates (80% to 90% are HRM patients).

16  36.   CDCR's classification and transfer to CIM subjects the transferring

17  HRM patient to substandard, dangerous and unequal treatment based on a

18  medical condition.  Once the HRM patient arrives at CIM and discovers the

19  harmful contaminated drinking water and deadly uncooled pre and post

20  treatment custodial care housing confinement conditions, the patient is

21  forced to make a coercive choice, separate and apart from their

22  discrimination while at CIM, of: 1) continue to stay housed at CIM and have

23  a greater risk to personal safety and premature death; or 2) ask for a

24  transfer to one of the two other HRM institutions (MCSP or RJD) which do

25  not have on-going contaminated drinking water nor deadly uncooled pre and

26  post treatment custodial care housing for HRM patients.  These transfers

27  are rarely granted (see Ex.8 Schnabel Dec.).

28       //

37.    At CIM, HRM patients are housed primarily in two facilities/yards, A-yard and C-Yard.  A-yard has one administration building with many offices (all air-conditioned), one visiting room (air-conditioned), one education building with correctional counselors offices and three classrooms (all air-conditioned), two vocational buildings with four classrooms (coolers and air-conditioners), two medical, dental and mental health buildings with many offices (all air-conditioned), one library and chapel building with offices (coolers and air-conditiones), one cafeteria building with two different chow halls (fans only) and eight 160 man Dorms (fans only).  It should be noted that each of the eight dorms have a small 8'x10' office with a window air-conditioner for the on-duty guards.  Only the locations which are considered officer and staff work areas have cooling, certainly not any of the custodial care living and eating areas, (over 76,800 Sqft. of uncooled living space).

38.    At CIM C-yard, the lack of inmate housing cooling for the disabled HRM patients is nearly identical to A-Yard.  The facility is comprised of one large building which houses administrative offices (air-conditioned), one building which houses medical (air-conditioned), one portable building that houses mental health (air-conditioned). All the living quarters that house the HRM patients are cell housing, four two tier cell blocks (ventilation only, no cooling of any kind).

39.    The seven water wells that serve CIM's water treatment plant have been contaminated for years.  The high level of multiple contaminates is documented in CIM's Consumer Confidence Reports ("CCR") which disclose on page one of all CCR's that "The sources were found to be vulnerable to the possible contaminating activities due to Nitrate Detection, animal feeding operations, wastewater treatment plants, non-irrigated crops, agriculture drainage and sewers.  All source wells are currently being treated."  The

1  shocking fact is that even after CIM spent over $6.5 million dollars for

2  it's Water Treatment Plant ("WTP") the contaminates exceed levels that are

3  safe to drink.  CIW has, and still is, paying $480,000.00 per year to serve

4  bottled water to it's women prisoners.  Because of the on-going consumption

5  of contaminated drinking water, the CIM male HRM patients are forced to

6  endure unequal, inferior and discriminatory conditions of confinement based

7  on their gender and medical disabilities as described herein.

8  40.    On information and belief CIM WTP staff have engaged in an on-going

9  conspiracy to conceal extensively contaminated drinking water that is being

10  delivered to disabled HRM patients for daily consumption.  Plaintiff's

11  investigation of drinking operations at CIM showed a dangerous and excessive

12  level of numerous violations of Federal and State drinking water standards.

13  This is NOT a situation where there were isolated exceedances of maximum

14  contaminates levels, but an intentional effort to completely disregard the

15  law and engage in on-going non-compliance for Lead and Nitrates (both are

16  deadly contaminates for HRM patients).  The on-going disregard of the

17  statutory and regulatory rules are serious, blatantly discriminatory and

18  are not to be discounted as isolated errors.

19  41.    Plaintiff's investigation of the public water purveyors at CIM

20  discovered that all CCR's showed multiple and excessive violations of

21  environmental drinking water standards and regulations.  The CIM CCR's

22  reviewed included: 2012, 2013, 2014, 2015, 2016 and 2017.  Plaintiff's have

23  posted the results of the investigation as a 9 page CCR review summary

24  (see Ex.14).  Plaintiff's have discovered, as a result of obtaining the CIM

25  lab reports that were filed with the State Water Resources Control Board,

26  serious under reporting of toxic contaminates.  The 2016 CCR falsely claims

27  that there was one Regulatory Action Level (AL) exceedance for Lead, when

28  the lab reports filed with the State Water Board document that there were

two exceedances. Shockingly, one of the two AL violations included levels
of Lead which are comparable to the Flint Michigan drinking water crimes,
yet at CIM, no notice or education was given, nor were there any remedial
efforts made to assure that the disabled HRM patients at CIM did not
continue to be poisoned.

42.     On information and belief, CIM defendants have know for years that
the ground water supplied to CIM inmates is non-potable, unequal,
substandard, contaminated with multiple highly hazardous chemicals and toxic
to many recovering disabled HRM patients.  In fact, bottled water was
provided to female inmates at CIW as early as 2007.  This fact alone shows
a pattern of deliberate indifference (or intent to harm). Defendants claim
that they installed a WTP to remediate some of the pervasive toxins that
the Chino Basin Aquifer has been polluted with for many years,this claim is
meaningless and clearly the contamination notice at Ex.2 documents that the
toxic contamination and on-going exposure to HRM patients continues
unabated.  Regardless of the level of contamination that can be proved, the
drinking water is still blatantly: unequal, substandard, inferior and
clearly discriminatory.

43.     On information and belief defendants intentional and egregious mis-
conduct in poisoning CIM HRM patients is an on-going scheme to punish some
of the more undesirable inmates in the CDCR system.  A-Facility has a high
percentage of inmates who have suffered a sex crime conviction.  A-Yard is
also the primary facility in the state that is approved to safely house gay
and transgender inmates.  The defendants are allowing and promoting
intentional and continuing toxic exposure, causing premature death,
on-going disease and illness to this class of dejected prisoner. Defendants
reasoned, the best way to conceal the on-going poisoning of these societal
outcasts is to aggregate the sick, infirm and old inmates, to a location

1    where their accelerated demise, increased sickness and extreme and illegal

2    punishment can be hastened via toxic exposure.  Defendants reasoned, in all

3    likelihood no one will find out, and if they do, no one will care because

4    these class of inmates often have heinous crimes and are perceived to be

5    societal dregs. Few would believe that California is running an

6    administratively concealed inmate death camp, which exposes societal

7    pariahs to toxic contaminates and deadly excessive heat (the outside

8    temperature in Chino on July 6, and 7, 2018 was 115° and 114°).

9    44.    On information and belief, this same on-going process of slowly

10   poisoning and punishing the perceived societal dregs at CIM is also

11   advanced by failing to have ANY pre or post treatment custodial care

12   housing cooling.  Intentionally exposing excessive heat to many heat

13   sensitive HRM patients is a documented form of cruel and unusual

14   punishment.  It is a medical fact that exposing elderly and HRM patients

15   to excessive heat is even more deadly than slowly poisoning them with

16   contaminated drinking water (review Ex.4 to understand the high rate of

17   exposure to deadly excessive heat).  Plaintiff's must be Ordered to safely

18   house it's elderly and HRM patients in a constitutional manner that does

19   not violate their equal protection rights.  The discriminatory facts shown

20   herein violate California's Elder Abuse Act warranting injunctive relief

21   based on continuing physical abuse of a disabled elderly class of inmates.

22   45.    In addition to filing Class grievances and Govt.Code § 910 claims,

23   Plaintiffs have engaged in pre-litigation settlement efforts.  Specifically

24   Plaintiffs sent a settlement request directly to the Federal Medical

25   Receiver, see July 22, 2016 letter (Ex.13) to J.Lewis Deputy Director,

26   Policy and Risk Management Services, California Correctional Health Care

27   Services, consisting of the aforementioned complaints, and asked that

28   Defendants immediately cease and desist their unlawful practices.

Defendants declined to attempt to resolve Plaintiff's claims without the need for litigation, and have denied Plaintiffs administrative 910 claims. To date, and to Plaintiff's knowledge, Defendants continue to engage in the unlawful and deadly discriminatory practices detailed in this Complaint.

46.    Defendants will continue their aforementioned policies and practices unless enjoined and restrained by this Court.  Without injunctive relief applicable to the Class as a whole, the Class members will continue to suffer irreparable harm for which there is no adequate remedy at law in that their constitutional and statutory rights will be systematically violated.  Without the intervention of this Court, Defendants will continue these unconstitutional practices.

47.    Defendants have the resources and money to provide both the uncontaminated drinking water to the male HRM patients, and the equal quality cooling to the elderly HRM pre and post treatment custodial care housing patients in a constitutional manner that does not violate Plaintiff's equal protection rights.  Defendants must be enjoined from continuing to house disabled HRM patients in a dangerous, dehumanizing and discriminatory manner.

48.    The differential treatment outlined in this complaint serves neither a legitimate compelling interest, nor a substantial state interest, nor is it narrowly tailored to serve any such interests.

49.    In engaging in the conduct alleged in this Complaint, Defendants, and each of them, acted with a discriminatory intent toward HRM inmate patients, and/or with deliberate indifference to, or a reckless disregard for the rights of HRM inmate patients.

50.    As a result of the discriminatory conduct alleged herein, Plaintiffs have suffered damages, including emotional distress damages and pain and suffering, in amounts to be determined at trial.

1    51.    In engaging in the conduct alleged in this Complaint, Defendants,

2    and each of them, acted maliciously, with a evil motive, fraudulently and

3    oppressively, and otherwise in a manner entitling Plaintiff's to an award

4    of punitive damages.

5                    V.    CLAIMS OF CLASS REPRESENTATIVES

6         1.    Harold Taylor   (age 70)

7    52.    Harold Taylor was transferred to CIM as a result of his HRM

8    Classification on December 4, 2015. He is currently housed at CIM A-Facility

9    and will be housed as an disabled HRM patient for the foreseeable future.

10   53.    From approximately December 4, 2015 to the present.  Mr.Taylor has

11   been housed at CIM as a HRM patient in pre and post treatment custodial care

12   housing and is located at A2-158 L.  Defendants care, housing and program

13   meet the elements of the State Elder Abuse Act because CIM furnishes

14   supervision to all HRM patients and provides daily custodial care including:

15   1) pre and post treatment custodial care housing (substandard and

16   overcrowded at 170% to 180% of design capacity); 2) drinking and bathing

17   water (contaminated as supported by CIM CCR's and contamination notices see

18   Ex,1&2); 3) food (two hot meals per day and a bag lunch at the CIM

19   cafeteria); 4) Medical Services, Plaintiff was assigned to a Primary Care

20   Physician ("PCP") Mechell Kerk and Taylor cannot choose to see another PCP;

21   5) on-site mental health care services available, assigned to a mental

22   health care clinician based on need; 6) education, library and religious

23   services are also provided based on a program schedual; 7) an exercise yard

24   with training facilities (bars, basketball court and running track) are also

25   provided.  Defendants are supervising Plaintiff and providing care to elder

26   and dependent adults that receive custodial care or assistance in a facility

27   pursuant to Winn v. Pioneer Medical Group(2016) 63 Cal.4th 148 and are

28   liable for neglect and physical abuse for their unequal,substandard and

discriminatory conduct.  The above seven elements meet the legal
definition of "custodial care" (Ibid.) under the Elder Abuse Act.

54.    On December 4, 2015 and thereafter up to and including this present
day, Taylor is housed in a dilapidated, overcrowded, unmaintained and
unsafe pre and post treatment custodial care housing unit known as CIM
Alfa-2 or Laguna Hall.  This run-down dorm has no housing cooling (fans
only).

55.    On or about June 15, 2016, Taylor developed on-going skin rashes,
by December 10, 2016, Taylor developed hives.  He has been previously
sickness and illness free for over 16 years at three other California
prisons.  Once Taylor arrived at CIM he was infected with a respiratory
illness that lasted two weeks.  Present day, Taylor has this same
reoccuring illness frequently, and it appears to be an on-going illness
(See Ex.8 Taylor Dec.).

56.    On December 12, 2017, the CIM audiologist diagnosed Taylor with
profound hearing loss.  Taylor did not have this loss when he was not
drinking from CIM's contaminated water supply.  Recently Taylor's sister
provided him with an article which documented that California Institution
for Women ("CIW"), the women's prison, was provided with bottled water
starting back in 2007 at an annual cost of $480.000.00.  No bottled water
has been provided to Taylor.  On information and belief, CIW receives its
water from CIM's WTP and CIW's water contains the same contaminates that
CIM provides to it's HRM patients.

57.    On March 14, 2018, Taylor met with CIM Chief Engineer I, Water Plant
engineer Isaac Morales regarding Taylor's water quality grievance (Ex.1).
Taylor informed Morales of his profound hearing loss, on-going skin rashes
and his continuing sicknesses and asked Morales for an ADA accommodation
for bottled water so that Taylor's on-going physical ailments, caused by

1  the contaminated water, would not advance Taylor's premature death.

2  Morales later acknowledged the substandard water quality and stated that

3  only one of the six CIM contaminates listed in the grievance (Ex.1) was

4  higher than MCSP or RJD.  At no time did Morales provide Taylor with the

5  water quality reports that Taylor requested in his grievance (verbal or

6  otherwise).  Morales denied Taylor the bottled water accommodation and

7  denied Taylor's federal and state constitutional right to equal quality

8  water in a discriminatory manner.

9  58.    On February 7, 2018, Taylor was informed via written ADA

10  accommodation request denial (see Ex.1) that Defendants B.Casterena,

11  T.Lambert and Dr.K.Torres all had NOTICE of the contaminated water at CIM

12  and refused Taylor's written accommodation request for equal quality

13  drinking water (bottled water like the women).  This written denial and

14  failure to act to protect Taylor and other similarly situated CIM HRM

15  patients continues to cause harm, injury and possibly premature death.  It

16  continues to be the on-going policy of these defendants and unnamed

17  Defendants to provide contaminated drinking water to HRM patients whose

18  only choice is to request a transfer or risk premature death and on-going

19  sickness by consuming the contaminated drinking water.

20  59.    On February 13, 2018, Taylor described and showed Dr.M.Kerk the

21  contaminated water symptoms including rashes, hives and Roseola (a

22  documented skin condition).  Defendant Kerk ignored Taylor's pain,

23  suffering and plea's for bottled water and stated that "CIM's water is

24  fine."  Taylor then challenged Defendant Dr.Kerk to come out to the Medical

25  building hallway and drink out of the infirmary drinking fountain.  Dr.Kerk

26  refused and claimed that Taylor was delusional.  Dr.Kerk then retaliated

27  against Taylor by referring him to CIM mental health Physician D.Olsen, and

28  failed to treat or test Taylor for any of the toxic water symptoms.

60.    During the hot weather time of the year at CIM, between the months of May and October for the years of 2017 and 2018,  Plaintiff has suffered from unequal and substandard interior ambient air cooling (fans only), which has exposed Taylor to an unconstitutional and discriminatory duration of excessive heat.  The temperature range and duration period that Taylor (and all other CIM HRM patients) was exposed to   (as documented at Ex.4) is: Temp. range of 85°-89° (70 days); Temp. range of 90°-94° (88 days); Temp. range of 95°-99° (66 days); Temp. range of 100°-104° (29 days); Temp. range of 105°-109° (16 days) and Temp. range of 114°-119° (2 days). On-going exposure of Elderly custodial care HRM patients to this deadly heat is at a minium neglect, and more likely physical abuse under California's Elder Abuse Act, because the Act assures the safety of custodial care victims.

61    As a result of the on-going forced consumption of contaminated drinking water and physical abuse including the discriminatory excessive custodial care heat that Taylor has been subjected to, Mr.Taylor has experienced severe emotional distress and depression.

62.    During all times Mr.Taylor has been in custody at CIM as a HRM patient, he has been subjected to all the discriminatory and illegal conditions of confinement explained in section IV, supra.

      2.  DAVID M. ZIEMKE  (age 40)

63.    David Ziemke was transferred to CIM as a result of his HRM Classification on March 24, 2017.  He is currently housed at CIM A-Facility and will be paroled on November 29, 2018.

64.    During all times Mr.Ziemke was in custody at CIM he was forced to consume contaminated drinking water as  he is indigent and can not purchase bottled water at 80¢ per 20oz. bottle . Mr.Ziemke was also unlawfully forced to live in a overcrowded and uncooled Dorm (fans only) with frequent