of state government including prison administration. The variety of prison activities, including bathing, restroom, canteen purchases, transportation and medical care and the variety of other prison activities and programs.

151. The defendants failing to provide equal access to pre and post treatment custodial care housing cooling for it's large volume of HRM patients; the failure to provide uncontaminated drinking water to 60, 70, and 80 year-old HRM patients who are intentionally subjected to deadly excessive heat and lack of any ambient air cooling. This has resulted in improper exclusion from participation in, and denial to Plaintiff of the benefits of a prison service on the basis of his physical handicap.

152. The Federal Damages Class Representatives and Class are currently subject to, and will continue to be subject to the unlawful treatment and are entitled to damages pursuant to 42 U.S.C. § 12101 et seq.

153. Plaintiffs re-allege all the preceding and following paragraphs of and allegations in, this Complaint.

XI. COUNT FOUR - VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 793 et seq,. (Against individual Defendants)

154. Plaintiffs re-allege all the preceding and following paragraphs of and allegations in, this Complaint.

155. The Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability ... shall, soley by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" 29 U.S.C. § 794(a). The statute further defines "[P]rogram or activity" to include "all the operations of . . . a department, agency special purpose district or other instrumentalilty of a State or of a local government." 29 U.S.C. § 794(b). This language suggests that the act applies broadly to all

aspects of state and local governance. Moreover, we have interpreted this precise language as evincing Congress' intent to apply the RA to "any program or activity receiving Federal financial assistance, "including state prisons." See Bonner, 857 F.2d at 562 (internal quotations omitted). We also held in Bonner that prison disciplinary hearings are "programs" within the meaning of the RA.

156. Defendants' acts and omissions that result in unequal access to the programs, services, and activities provided by Defendants as alleged herein are in violation of 29 U.S.C. § 794 et seq. Defendants are the direct recipients of federal funds sufficient to invoke the coverage of Section 504, and are unlawfully discriminating against Class Representatives and the Class on the sole basis of Plaintiff's disabilities.

157. The Federal Damages Class Representatives and Class are currently subject to, and will continue to be subject to the unlawful discriminatory treatment and are entitled to damages pursuant to 29 U.S.C. § 794 et seq.

XII. COUNT FIVE - VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT
(Cal.Civ.COde § 54 et seq., Against All Individual Defendants).

158. Plaintiffs re-allege all the preceding and following paragraphs of and allegations in the Complaint.

159. The California Disabled Persons Act incorporates the entirety of the ADA. Cal.Civ.Code § 54.1(d). Any violation of the ADA is a per se' violation of the California Disabled Persons Act. As stated above, the Defendants have failed to comply with the ADA and, therefore, have failed to comply with the California Disabled Persons Act's prohibitions against disability discrimination.

160. The California Damages Class Representatives and Class are currently subject to, and will continue to be subject to the unlawful discriminatory treatment and are entitled to damages pursuant to Cal.Civ.

1  Code § 54 et seq.

2      XIII. COUNT SIX - VIOLATION OF THE CALIFORNIA ELDER ABUSE ACT
3          (California Welfare and Institution Code § 15600 et seq.)
            [Against All Individual Defendants]

4  161.   Plaintiffs re-allege all the preceding and following paragraphs of,
5  and allegations in, this Complaint.

6  162.   The Defendants interfered with the California Damages Class
7  Representatives and Class', rights to be free from neglect and physical
8  abuse under California's Elder Abuse Act.

9  163.   The aforementioned acts of Defendants proximately caused Plaintiffs
10 to suffer from Defendants negligent failure to provide safe dependent care
11 to HRM patients who are housed in Defendants pre and post treatment
12 custodial care housing units in violation of Cal.Welf.Inst. Code §
13 15610.57. Additionally, Defendants acts to intentionally harm Plaintiffs
14 by providing contaminated drinking water, during many high heat episodes,
15 to Elder or Dependent care HRM patients, constitutes "physical abuse"
16 because the intentional acts of abuse were committed with recklessness,
17 oppression, fraud and malice in violation of Cal.Welf.Inst. Code
18 § 15610.63.

19 164.   The California Damages Class Representatives and Class are
20 currently subject to, and will continue to be subject to Defendants
21 deadly, substandard and unlawful care and custody treatment alleged herein
22 and seek statutory damages in an amount to be proven at trial, and to
23 Punitive damages.

24     XIV. COUNT SEVEN - INJUNCTIVE RELIEF PURSUANT TO ARTICLE 1 § 7 OF
           THE CALIFORNIA CONSTITUTION [EQUAL PROTECTION] AND
25         CAL.GOV.CODE § 11135(A) (AGAINST CDCR, CIM & WARDEN BORDERS)

26 165.   Plaintiffs re-allege all the preceding and following paragraphs of,
27 and allegations in, this Complaint.
28     //

166. The Defendants interfered with the California Injunctive Relief Class Representatives' and Class' rights to equal protection of the law under Article 1 § 7 of the California Constitution, as previously alleged.

167. California Government Code Section 11135(a) provides that no person, on the basis of sexual orientation, gender identity or gender, shall be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under any program or activity operated or funded directly by the State.

168. Plaintiffs are informed and believe that the CDCR and CIM receive financial assistance from the state.

169. The aforementioned acts of Defendants proximately caused the California Injunctive Relief Class Representatives and Class to be denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, programs or activities receiving financial assistance from the State of California.

170. The California Injunctive Relief Class Representatives and Class are currently subject to, and will continue to be subject to, absent the intervention of this court, the unlawful treatment alleged herein, and therefore, seek injunctive relief under the foregoing Constitutional provisions and statutes on behalf of themselves and the foregoing Constitutional provisions and statutes on behalf of themselves and the class of similarly situated individuals.

XV. APPROPRIATENESS OF EQUITABLE RELIEF

171. The Federal and California Injunctive Relief Class Representatives and Classes are currently (or will in the future be) incarcerated at the CIM and will continue to be discriminated against into the future, absent intervention of this Court. Further, CIM has informed Plaintiffs in response to complaints and written grievances about the on-going

1 discriminatory and dangerous (sometimes deadly) treatment that Defendants
2 inflict upon the HRM Custodial care patients according to policy and deny
3 any discriminatory treatment, thus they will not change how they
4 discriminate against HRM patients.
5 172.  CIM's continuing discrimination and unequal treatment of HRM
6 custodial care patients violates the Federal and California Injunctive
7 Relief Class Representatives' and Classes' constitutional rights, and
8 causes them continuing, sweeping, dangerous and irreparable harm, in many
9 cases premature death.
10 173.  Because no adequate remedy at law exists for the injuries alleged
11 herein, Plaintiffs seek injunctive releif under both federal and state
12 law.
13         XVI.   PRAYER
14         WHEREFORE, Plaintiff's on behalf of themselves and the class
15 members they represent, request damages against each Defendant as follows:
16         1.  General and Special damages according to proof; and,
17         2.  Temporary, preliminary and permanent injunctive relief
18 prohibiting Defendants from continuing to engage in the unlawful practices
19 complained of herein; and,
20         3.  As against the individual Defendants only, Punitive damages
21 according to proof; and,
22         4.  In addition to actual damages, statutory damages as allowed by
23 law, including statutory and treble damages under California Civil Code
24 §§52 and 52.1, and 54 et seq., and California Welfare and Institutions
25 Code § 15600 et seq.; and,
26         5.  Attorneys' fees and costs under 42 U.S.C. § 1988; California
27 Civil Code §§ 52(b)(3), 52.1(h); California Code of Civil Procedure
28 § 1021.5, and whatever other statute or law may be applicable; and,

6. The costs of this suit; and,

7. Such other relief as is just and proper.

VERIFICATION OF CLASS ACTION COMPLAINT - 28 U.S.C. § 1746

We, the undersigned Class Representatives' having each read the foregoing: CLASS ACTION COMPLAINT FOR DAMAGES INJUNCTIVE RELIEF:

Declare that the matters stated herein are true of our own knowledge except those matters which are stated on information and belief, and as to those matters we believe them to be true.

We declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

EXECUTED on the dates listed below in the month of November, 2018, at San Bernardino County in the city of Chino, California.

All Respectfully submit below

Dated: 11/23/2018

Harold Taylor, as Class Representative Plaintiff

Dated: 11-25-18

David M. Ziemke, as Class Representative Plaintiff

Dated: NOV. 25, 2018

Jon Gary Schnabel, as Class Representative Plaintiff

Dated: November 24, 2018

Bruce Koklich, as Attorney in Fact Plaintiff for the Estate of Bruce Brooks

Dated: 11/25/18

Ronald E. Austin, as Class Representative Plaintiff

[Pg.71 of 74]

Dated: November 24, 2018

_____
Bruce Koklich, as Class
Representative Plaintiff

Dated: 11/24/2018

_____
Christopher Camp, as Class
Representative Plaintiff

Dated: 11/24/2018

_____
George Jackson, as Class
Representative Plaintiff

DEMAND FOR JURY TRIAL

Plaintiff's on behalf of themselves individually and on behalf of the Class, demand a Jury Trial.

Dated: 11/23/2018

_____
Harold Taylor

Dated: 11-25-18

_____
David M. Ziemke

Dated: Nov. 25, 2018

_____
John Gary Schnabel

Dated: November 24, 2018

_____
Bruce Koklich as Attorney in Fact
for the Estate of Bruce Brooks

Dated: 11/25/18

_____
Ronald E. Austin

Dated: November 24, 2018

_____
Bruce Koklich

Dated: 11/24/2018

_____
Christopher Camp

Dated: 11/24/2018

_____
George Jackson

EXHIBIT LIST SUMMARY TO SUPPORT UNEQUAL AND CONTAMINATED CIM DRINKING WATER AND SUBSTANDARD AND DEADLY UNCOOLED HIGH RISK MEDICAL ("HRM") PRE AND POST TREATMENT CUSTODIAL CARE HOUSING FOR DISABLED PATIENTS

EXHIBIT #

1. See August 15, Third Level Decision, which included Five Consumer Confidence Reports ("CCR") showing multiple contaminates exceeding Public Health Goals. Note the May 14, 2018 First Level Appeal Response wherein Defendant I.Morales admits that "of the Six contaminates listed by you, only one exceeded the other facilities" (see Pg.2 ¶2). Defendant Morales did a comparison of CIM's water quality to other facilities (a required Equal Protection element) and found CIM's drinking water to be inferior.

2. See May 30, 2018, Tier one Nitrate contamination notice (improperly not noticed as a Tier One violation) wherein CIM failed to timely and properly notice the inmate consumers that they should not consume the drinking water nor bath in it until further notice. Notice was not posted until June 5, 2018 and was inadequate based on the excessive level of contamination requiring 24 hour notice to not drink or boil the drinking water.

3. See September 2018 CIM Canteen order form wherein bottled water is .80¢ per 20 oz. bottle (a 500% mark-up) and is limited to 48 bottles of 20 oz. water (2 cases of soda).

4. See Daily Temperature logs from AccuWeather.com for the months of May through October. For the years of 2017 and 2018.

5. See May 4, 2018 CDCR 22 form response from Defendant I.Moreles wherein Morales admits that "Good Catch. The [correct numerical] values passed [missed] our review and the professional Engineer Review." showing a statutory violation of Title 22 § 64481.

6. See 2001 Prison Drinking water story wherein California Institution for Women ("CIW") has purchased bottled water for the women inmates at a cost of $480,000.00 per year for five years, but not the men. No prison filtration system has been built for either the men's or Women's prison, exactly as Mayor Dennis Yates has predicted "Even if you give them money, they [CIM] don't do anything".

7. See June 12, 2018 Estate of Bruce Brooks Forensic Toxiology Report; December 8, 2017 Forensic Pathologist Report and December 13, 2017 Certificate of Death of Bruce Brooks.

8. Class Representative Declarations supporting the Coercive Choice COA's and on-going harm to the disabled HRM patient class. Including Declarations from: Harold Taylor; David M. Ziemke; Jon Schnabel; Bruce Koklich; Ronald Austin and Jeff Sabino.

9. See May 29, 2018 §910 Government Claim form exhaustion letter on Bruce Brooks Wrongful Death and Elder Abuse COA's, Claim # 18004539; and July 5, 2018 §910 Government Claim form and exhaustion letter on Class Representative Harold Taylor's multiple COA's, Claim # 18005787.

10. See 2014 Heat Plan and updates. The Heat Plan at Pg.3 ¶5 assumes that some housing units have air conditioning and others do not. It is illegal discrimination to intentionally transfer/aggregate 60, 70 and 80+ year-old HRM patients to unair-conditioned, old, dilapidated and overcrowded pre and post treatment custodial care housing units. Nowhere in the Heat Plan does it authorize non-cooled housing for HRM patients. The Heat Plan at Pg.2 ¶3 documents the hydration requirement (using CIM's contaminated drinking water) as a remedy for excessive heat events.

11. See October 12, 2018 (anticipated date) Third Level Appeal decision which confirms that MCSP and RJD both have air conditioning for their HRM pre and post treatment custodial care housing, but CIM has none because of "the significant cost associate[d] with installation of air conditioning units" (see July 6, Second Level Response at Pg.1 ¶5). The Third/Second Level grievance response confirms that State funding for other maintenance items is more important then CIM inmate deaths.

12. See July 2018 Front Page story in the Prison Legal News documenting the success and the volume of correctional excessive temperature litigation in other states. Plaintiff's counsel in the Wallace Pack Unit case (like here at CIM) also had to remedy the prison's deadly policy of providing contaminated drinking water as part of the institutions Heat Plan calling for hydration during excessive heat episodes (see Pg.3 ¶13).

13. July 22, 2016 Letter to J.Lewis, Deputy Director of Policy and Risk Management Services for California Correctional Health Care Services. This letter documents the pre-litigation efforts to remediate the claims - No Respose.

14. Chino Basin Aquifer Ground Water Assessment review of California Institution for Men Water Treatment Plant and CCR's for the years 2012, 2013, 2014, 2015, 2016 and 2017. Showing multiple contaminates supporting an unequal and substandard water quality finding. Also attached is a November 26, 2018 request letter to Water Resources Control Board analyst Eric Zuniga with copy to Southern California Water Board Field Office Bureau section Chief Sean McCarthy documenting the inadequate and inaccurate Lead testing and requesting remedial action.